**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| WILLIE J. LENARD and TAHJ AHMAAD VAUGHANS,<br><br>*Plaintiffs*,<br><br>vs.<br><br>KAY IVEY, in her individual capacity and in her official capacity as Governor of the State of Alabama, *et al.*, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:22-cv-485-JTA |

*Defendants*.

**MOTION TO DISMISS**


Steve Marshall
*Attorney General*

Misty S. Fairbanks Messick (ASB-1813-T71F)
A. Reid Harris (ASB-1624-D29X)
Benjamin M. Seiss (ASB-2110-O00W)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.35.8674
Facsimile: 334.353.8400
Misty.Messick@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

# TABLE OF CONTENTS


Introduction ..........3

Background ..........4

Legal Standard ..........7

Argument ..........8

I. Plaintiff Lenard's previous lawsuit precludes his claims here. ..........8

II. Plaintiffs lack standing. ..........10

A. Plaintiffs cannot establish an injury in fact simply based on being voters in Montgomery County. ..........12

B. Plaintiffs cannot establish a justiciable injury based on their status as potential candidates that could entitle them to injunctive relief. ..........14

C. Plaintiffs cannot establish traceability or redressability as to Governor Ivey and Attorney General Marshall. ..........17

III. Plaintiffs' federal claims are due to be dismissed for failure to state a claim. ..........19

IV. Plaintiffs' federal claims for money damages are barred by qualified immunity. ..........24

V. Plaintiffs' State-law claims are barred by sovereign immunity or State-law immunity. ..........28

CONCLUSION ..........29

## INTRODUCTION

To qualify to run for Montgomery County Sheriff under Alabama law, an individual must satisfy several requirements. Those requirements include having three years of immediate prior service as a law enforcement officer, having a college degree, and residing in Montgomery County for one year immediately prior to qualifying. Plaintiffs—Willie J. Lenard, a Montgomery County voter who unsuccessfully sought to run for Sheriff in the 2022 Democratic Primary, and Tahj Ahmaad Vaughans, another Montgomery County voter—claim these requirements are unconstitutional. Neither Plaintiff alleges that he plans to run in any future election, and one Plaintiff already litigated his claim—unsuccessfully—in State court. Because claim preclusion bars Plaintiff Lenard's claim and Plaintiff Vaughans cannot establish standing, the Complaint should be dismissed at the outset; the Court need not consider the merits of Plaintiffs' claims.

Several additional obstacles prevent Plaintiffs' Complaint from surviving dismissal. For one, even if Plaintiff Lenard's claims aren't barred, he still lacks standing for declaratory or injunctive relief because he alleges no future injury. For another, qualified immunity bars Plaintiffs' federal claims for monetary damages, and federal sovereign immunity or State absolute immunity bars their State law claims. The Complaint also fails to state a claim because the challenged provision doesn't unlawfully restrict Plaintiffs' access to political opportunity. Instead, it

provides reasonable, relevant qualifications that help ensure that candidates for an important office can adequately serve the people of Montgomery County.

For these and other reasons, the State Defendants Governor Kay Ivey, Attorney General Steve Marshall, and Secretary of State John H. Merrill—each sued in her or his individual and official capacities—move this Court to dismiss Plaintiffs' Complaint in full.

**BACKGROUND**

Ala. Act No. 2020-146 ("the Act"), codified at Ala. Code § 45-51-230.04, became law on May 18, 2020. Doc. 1-1 at 4. By its terms, the Act applies only in Montgomery County and sets qualifications for Montgomery County Sheriff. *Id.* at 2-3. Section 2 of the Act provides:

> (a) On or after the effective date of this act, a person qualifying for election to the office of sheriff in the county or any person appointed to serve as a sheriff shall meet all of the following minimum qualifications, in addition to any other qualifications required by law:
>
> (1) The person is a citizen of the United States.
>
> (2) The person has been a resident of the county for at least one year immediately prior to the qualification date.
>
> (3) The person has the qualifications of an elector pursuant to state and federal law and the person has been registered to vote in the county at least one year immediately prior to qualifying.
>
> (4) The person has been awarded a four-year college degree from an accredited university.

> (5) The person is 25 years of age or older prior to qualifying.
>
> (6) The person at the time of qualifying has three or more years of immediate prior service as a law enforcement officer having the power of arrest.
>
> (7) The person has never been convicted of a felony.
>
> (b) Upon election, the sheriff of the county shall attend annually a minimum of 12 hours of continuing education approved by the Alabama Sheriffs Association.

*Id.* at 2-3.

More than a dozen Alabama counties have similar laws providing qualifications for sheriff. *See* Ala. Code § 45-1-237 (Autauga); Ala. Code § 45-2-238 (Baldwin); Ala. Code § 45-4-237 (Bibb); Ala. Code § 45-9-230.20 (Chambers); Ala. Code § 45-12-233 (Choctaw); Ala. Code § 45-15-233 (Cleburne); Ala. Code § 45-19-236 (Coosa); Ala. Code § 45-26-236 (Elmore); Ala. Code § 45-27-234 (Escambia); Ala. Code § 45-41-230.20 (Lee); Ala. Act No. 2021-281 (Randolph); Ala. Act No. 2017-244 (Talladega); Ala. Act No. 2017-426 (Tallapoosa); Ala. Act No. 2017-461 (Russell); and, Ala. Act No. 2016-285 (Wilcox). Apart from local laws related to sheriffs, numerous local laws now provide qualifications for city councilmen, *e.g.*, Ala. Code § 45-8A-23.053 (Anniston), for mayor, *e.g.*, Ala. Code § 45-37A-52.92 (Birmingham), or for Boards of Education, *e.g.*, Ala. Code § 45-20-100.01 (Covington County).

Earlier this year, Plaintiff Lenard attempted to run in the Democratic Primary for the Office of Sheriff of Montgomery County. Doc. 1 ¶ 20. He did not qualify because he "did not have three or more years of immediate prior service as a law enforcement officer." *Id.* ¶ 21. The Complaint contains no allegation about whether Plaintiff Lenard satisfies the other requirements to run for Montgomery County Sheriff and it contains no allegations whatsoever as to whether Plaintiff Vaughans satisfies the requirements to run for Montgomery County Sheriff. Similarly, neither Plaintiff alleges an intent to run for Montgomery County Sheriff in the future. *See generally* Doc. 1.

On February 7, 2022, Plaintiff Lenard filed suit in Montgomery County Circuit Court challenging the constitutionality of the Act. *Id.* ¶ 22. Lenard argued that the Act violated the First and Fourteenth Amendments of the U.S. Constitution as well as provisions of the Alabama Constitution. Complaint, *Lenard v. Merrill*, No. 03-CV-22-0046 (Montgomery Cnty. Cir. Ct. 2022) (Doc. 1) (attached as Exhibit A) ¶¶ 19-29.[1] The circuit court ruled against Plaintiff Lenard, Doc. 1 ¶ 23 (attached as Exhibit B), and the Alabama Supreme Court affirmed in March 2022, *id.* ¶ 24 (attached as Exhibit C).

---

[1] In addition to the pleadings, a court may consider judicially noticeable facts when reviewing a Rule 12 motion. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). A court may take judicial notice of other court proceedings and matters of public record. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

On August 12, 2022, Plaintiffs Lenard and Vaughans filed the present Complaint, which includes claims substantially identical to the claims Lenard pressed in State court. The Complaint includes three counts. Under Count I, Plaintiffs request declaratory relief under the First and Fourteenth Amendments of the U.S. Constitution. *Id.* ¶¶ 25-37. Under Count II, Plaintiffs demand compensatory damages from the State Defendants in their individual capacities based on alleged violations of the U.S. Constitution. *Id.* ¶¶ 38-50. Under Count III, Plaintiffs request declaratory relief under the Alabama Constitution. *Id.* ¶¶ 51-56.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." *Id.* (citing *Twombly*, 550 U.S. at 555–57). On a motion to dismiss, a court accepts a plaintiff's factual allegations as true. *Id.* at 678. "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). A facial attack on subject-matter jurisdiction under Rule 12(b)(1) applies essentially the same test employed

for Rule 12(b)(6) review. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

Dismissal for failure to state a claim is proper where, as here, "no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Courts "have not shied away from disposing of *Anderson-Burdick* claims at the motion-to-dismiss stage where a plaintiff's allegations failed as a matter of law." *Daunt v. Benson*, 999 F.3d 299, 313 (6th Cir. 2021) (citation and quotation marks omitted); *see e.g., De La Fuente v. Merrill*, No. 2:16-CV-755-WKW, 2017 WL 3765744, at *1 (M.D. Ala. Aug. 30, 2017) (dismissing *Anderson-Burdick* claim for failure to state a claim).

## ARGUMENT

### I. Plaintiff Lenard's previous lawsuit precludes his claims here.

Because Plaintiff Lenard's claims are the same claims he brought or could have brought in the State court proceedings he lost, claim preclusion bars his claims here. "The purpose behind the doctrine of res judicata [or claim preclusion] is that the 'full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)

(quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)). "Res judicata bars the filing of claims which were raised *or could have been raised* in an earlier proceeding." *Id.* (emphasis added). "Under *res judicata* the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, *whether or not raised at trial*." *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir. 1984) (emphasis added; internal quotation marks and citation omitted).

"[A] party may raise a res judicata defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). But this Court may also take judicial notice of the pleadings, orders, and judgment entered in Plaintiff Lenard's State court litigation for purposes of the State Defendants' *res judicata* defense without converting their motion to dismiss into a motion for summary judgment. *See Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892 (11th Cir. 2013); *see also Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (holding that courts could properly consider documents from prior State court action in considering a motion to dismiss on res judicata grounds).

"In considering whether to give preclusive effect to state-court judgments under res judicata . . . the federal court must apply the rendering state's law of preclusion." *Community St. Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011)

(citation omitted). "The elements of *res judicata*, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits." *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 725 (Ala. 1990). "If those four elements are present, any claim that was or could have been adjudicated in the prior action is barred from further litigation." *Id.*

The judgment against Plaintiff Lenard in *Lenard v. Merrill* satisfies all four elements. First, the circuit court entered "final judgment on all claims" against Plaintiff Lenard on May 2, 2022. *Lenard*, No. 03-CV-22-0046 (attached as Exhibit B) (capitalization altered). Second, the Circuit Court of Montgomery County is a court of "general jurisdiction." Ala. Const. art. IV, § 142. Third, Lenard was a plaintiff and Secretary Merrill was a defendant in both actions. *Compare* Doc. 1, *with* Ex. B. And fourth, the causes of action are the same in each suit with Lenard seeking relief under the First and Fourteenth Amendments to the United States Constitution and pursuant to similar theories under the State Constitution. *Compare* Doc. 1, *with* Ex. A. Thus, *res judicata* applies and precludes the claims Plaintiff Lenard raises here.

## II. Plaintiffs lack standing.

It appears that Plaintiffs attempt to allege a justiciable injury based on (1) their status as voters in Montgomery County and (2) their status as potential candidates

to run for Montgomery County Sheriff. *E.g.*, Doc. 1 ¶ 12. Each attempt fails. First, Plaintiffs lack standing as voters because their injury is no different from any other voter in Montgomery County. This type of generalized grievance cannot be an injury in fact for standing purposes. Second, though Plaintiff Lenard may have suffered an injury in the past, both Plaintiffs lack standing for prospective injunctive relief because the Complaint contains no allegations about any future injury. The Court lacks jurisdiction to enter declaratory or injunctive relief based only on past conduct, and the only factual allegations in the Complaint relate to past conduct. Finally, even if either Plaintiff could establish a justiciable injury, neither Plaintiff can establish standing as to Governor Ivey and Attorney General Marshall because any alleged harm is not traceable to those State Defendants or redressable by a court order against them.

"[T]he irreducible constitutional minimum of standing contains three elements." *Defs. of Wildlife v. Lujan*, 504 U.S. 555, 560 (1992). "For a party to have standing to bring a lawsuit, it must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "The focus of the standing inquiry is whether the

plaintiff is the proper party to bring this suit." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) (citation omitted).

### A. Plaintiffs cannot establish an injury in fact simply based on being voters in Montgomery County.

To satisfy the injury-in-fact requirement of standing, Plaintiffs must allege an injury that is "concrete and particularized" as well as "actual or imminent." *Lujan*, 504 U.S. at 560. The alleged injury cannot be "conjectural or hypothetical." *Id.* Further, "a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'" *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). A "general interest common to all members of the public" is insufficient to constitute an injury in fact for standing purposes. *Id.* (citation omitted). *See also Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (finding no alleged injury in fact where voter "cannot explain how his interest in compliance with state election laws is different from that of any other person").

The Supreme Court's analysis in *Carney* is instructive. In *Carney*, a lawyer challenged Delaware's system of selecting judges to some of its courts because the system required candidates to be members of a major political party. 141 S. Ct. at 497. Even though the plaintiff "must live and work within a State that (in his view) imposes unconstitutional requirements for eligibility on three of its courts[,] . . . that kind of interest does not create standing." *Id.* at 499. The plaintiff could only

establish standing by showing that he suffered a "personal and individual injury beyond this generalized grievance." *Id.* (citation omitted). Because he could not do so, he lacked standing. *Id.*

The same is true here. Plaintiffs' allegation of injury based on their status as voters is nothing more than a generalized grievance. To establish standing, Plaintiffs must show a personalized injury distinct from the public at large. Aside from allegations about Plaintiff Lenard's unsuccessful *past* attempt to run for Montgomery County Sheriff (addressed below), the Complaint includes no allegations that distinguish Plaintiffs from any other voter in Montgomery County. They therefore cannot establish standing and the Complaint is due to be dismissed. *See also Casey v. Town of Yarmouth*, 514 F. Supp. 3d 306, 317 (D. Me. 2021) (dismissing voters' ballot access claims for lack of standing where voters simply "opposed . . . any narrowing of the field of possible candidates").[2]

---

[2] Plaintiffs' injury as voters also warrants dismissal as time-barred under Alabama's two-year statute of limitations, *see* Ala. Code § 62-3-8(*l*). *See also Jones v. Prueit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc). For purposes of a § 1983 claim, "the statute of limitations begins to run from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996)). Plaintiffs had reason to know that they would be injured when Governor Ivey signed the Act into law on May 18, 2020, Doc. 1-1 at 4. *See Hillcrest Prop., LLC v. Pasco County*, 754 F.3d 1279, 1282 (11th Cir. 2014) (holding that it was appropriate to determine that a claim accrued when the law at issue is enacted when "the harm occurs immediately upon, and because of, the statute's enactment" (citing *Levald, Inc. v. City of Palm Desert*, 988 F.2d 680, 688 (9th Cir. 1993)). Because Plaintiffs filed this action after May 18, 2022, *see* Doc. 1, the statute of limitations bars their claims based on injury as voters.

### B. Plaintiffs cannot establish a justiciable injury based on their status as potential candidates that could entitle them to injunctive relief.

Neither Plaintiff alleges an intention to run for office in any future election and they do not even clearly allege that they will *not* be qualified to run for Montgomery County Sheriff in a future election.[3] They cannot establish standing by arguing that they *might* run for Montgomery County Sheriff sometime in the future and that they *might* not be qualified to run at that time; such a purported injury is "conjectural or hypothetical" instead of the "concrete, particularized, and imminent" harm required to establish standing. *Carney*, 141 S. Ct. at 499; *see also Renne v. Geary*, 501 U.S. 312, 316 (1991) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.") (internal citations and quotation marks omitted).

That Plaintiff Lenard unsuccessfully attempted to run for Montgomery County Sheriff in the past does not change the conclusion that the Court lacks jurisdiction over his request for injunctive relief.[4] "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."

---

[3] The State Defendants recognize that Plaintiff Lenard was not qualified to run in the 2022 election because he did not meet the requirement for three years of immediate law enforcement experience at that time.

[4] To the extent Plaintiff Lenard seeks money damages for a *past* violation of his purported constitutional rights, those claims are barred by qualified immunity. *See* § IV.

*O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). The plaintiff must allege facts showing "a substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or 'maybe' chance is not enough." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (quoting *Lyons*, 461 U.S. at 103). To survive dismissal, the plaintiff must show "a real and immediate threat of future harm." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) (citing *Lyons*, 461 U.S. at 105). Where the Eleventh Circuit has "found a sufficient imminence of future harm based on a past injury, the plaintiff has alleged with particularity that a future injury would likely occur in substantially the same manner as the previous injury." *Id.* at 1208.[5]

In the Complaint, Plaintiffs allege that in the past, they "could qualify to run" for Montgomery County Sheriff, Doc. 1 ¶ 12, and that Plaintiff Lenard unsuccessfully attempted to qualify to run in the 2022 Democratic Primary election that occurred (and concluded) earlier this year, *id.* ¶¶ 19-24. However, the Complaint contains no allegations whatsoever about any prospective injury. Plaintiffs do not, for example, allege that they plan to run for Montgomery County Sheriff in the future

---

[5] There are no exceptions to Plaintiffs' burden to show that standing exists. *Friends of the Earth Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 191 (2000). Although mootness contains an exception for cases that are capable of repetition yet evading review, "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Id.*

and that they will still be unqualified under Alabama law at that time. Plaintiffs have not "specifically set forth facts" that show a real and immediate threat of future injury. *Elend*, 471 F.3d at 1207. They certainly have not done so "with particularity." *Id.* at 1208. Accordingly, the Court lacks jurisdiction to enter claims for injunctive relief and all such claims are therefore due to be dismissed.

Further, even if Plaintiffs made such an allegation, the Court would nevertheless lack jurisdiction over such a claim because it would not be ripe. "The ripeness doctrine is one of the several strands of justiciability doctrine that go to the heart of the Article III case or controversy requirement." *Mulhall v. UNITE HERE Loc. 355*, 618 F.3d 1279, 1291 (11th Cir. 2010) (alteration incorporated and citation omitted) "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). Another election for Montgomery County Sheriff will not occur for another four years, Ala. Const. art. V, § 138, and Plaintiffs could be qualified to run at that time—based either on a change in facts (they could become qualified) or a change in the law (the Alabama Legislature could change the law in the coming quadrennium). In these circumstances, even if Plaintiffs alleged that they intended to run for office sometime in the future, the Court would nevertheless lack jurisdiction over Plaintiffs' claims.

### C. Plaintiffs cannot establish traceability or redressability as to Governor Ivey and Attorney General Marshall.

Even if Plaintiffs could establish a justiciable injury, their claims against Governor Ivey and Attorney General Marshall are due to be dismissed because the alleged injury is not traceable to or redressable by an order against those State Defendants. "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021). Similarly, a plaintiff's injuries must be redressable by an action against a particular defendant. *See Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) ("Even if we assume that all of those alleged injuries meet the *Lujan* injury-in-fact requirement, [plaintiff] still does not have standing to bring this claim because her injuries are not fairly traceable to the Alabama Attorney General, and they cannot be redressed through this action against him."). Courts can "enjoin executive officials from taking steps to enforce a statute . . . only when the officials who enforce the challenged statute are properly made parties to a suit." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020).

Neither Governor Ivey nor Attorney General Marshall enforce the challenged provision, and Plaintiffs do not allege facts indicating otherwise. Instead, Plaintiffs say that that Governor Ivey has the "authority to faithfully execute all laws within the State of Alabama," Doc. 1 ¶ 6, and that Attorney General Marshall has "the

authority to examine the constitutional validity of State legislation," Doc. 1 ¶ 7. But that general authority does not mean that they enforce the specific provision as to be proper defendants in this lawsuit. *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1300 (11th Cir. 2019) (en banc) (rejecting the argument that the Attorney General is necessarily a proper defendant in challenge to State statute).[6] Plaintiffs include no allegations at all about any actions taken by Governor Ivey or Attorney General Marshall related to the allegations in the complaint. "Because the [Governor and] Attorney General didn't do (or fail to do) anything that contributed to plaintiffs' [alleged] harm, plaintiffs cannot meet Article III's traceability requirement." *Id.* at 1301. Similarly, because no injunction against Governor Ivey or Attorney General Marshall could afford Plaintiffs any relief, Plaintiffs cannot establish redressability. *Jacobson*, 974 F.3d at 1254-55.[7]

[6] Plaintiffs also allege that the Attorney General has "the authority to defend the State of Alabama," doc. 1 ¶ 7, but the fact that he is counsel for the State and State officials does not make him an appropriate defendant in any litigation aimed at his clients just as it other lawyers are not routinely made defendants in the case brought against their clients.

[7] Plaintiffs also broadly allege that all Defendants violated Plaintiffs' constitutional rights by "accepting, adopting, approving, requiring and enforcing" the candidate qualification. Doc. 1 ¶ 50. These allegations—all of which are legal conclusions—are insufficient to establish standing. *See Davila*, 326 F.3d at 1185 ("[L]egal conclusions masquerading as facts will not prevent dismissal."). To the extent that the reference to "approving" the Act is addressed to Governor Ivey's signing it into law, "[u]nder the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law." *Women's Emergency Network v. Bush*, 323 F.3d 937, 950 (11th Cir. 2003).

For similar reasons, the Eleventh Amendment bars Plaintiffs' claims for injunctive relief. "[T]he Eleventh Amendment prohibits suits against [S]tate officials where the [S]tate is, in fact, the real party in interest." *Summit Med. Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). Although *Ex parte Young* allows suits against State officials for prospective injunctive relief to end violations of federal law, 209 U.S. 123 (1908), this narrow exception does not allow a suit against a State official who does not "ha[ve] any connection to the enforcement of the challenged law at issue." *Summit*, 180 F.3d at 1341. As described above, Governor Ivey and Attorney General Marshall have no connection to the allegations in the Complaint. Thus, the *Ex parte Young* exception does not apply, and sovereign immunity bars Plaintiff's claims against Governor Ivey and Attorney General Marshall.

## III. Plaintiffs' federal claims are due to be dismissed for failure to state a claim.

In evaluating constitutional challenges to candidacy restrictions, courts "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the candidate seeks to vindicate." *Grizzle v. Kemp*, 634 F.3d 1314, 1322 (11th Cir. 2011) (alterations incorporated and citation omitted). If, based on the character and magnitude of the asserted harm to the plaintiff's political opportunity, the restriction on a plaintiff's rights is "severe," the restriction survives only if it is narrowly tailored to advance a compelling State interest. *Id.* But if the burden on the plaintiff is not severe, "the test

is not whether the regulations are necessary but whether they rationally serve important state interests." *Swanson v. Worley*, 490 F.3d 894, 912 (11th Cir. 2007). If the restriction is "reasonable" and "nondiscriminatory," it "usually" will be justified by a State's important regulatory interest in conducting elections. *Id.*

"The Supreme Court has not 'attached such fundamental status to candidacy as to invoke a rigorous standard of review.'" *Grizzle*, 634 F.3d at 1321 (quoting *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972)). But because "the right to vote is fundamental" and "laws that affect candidates always have at least some theoretical, correlative effect on voters," strict scrutiny is sometimes appropriate. *Id.* (citation omitted). However, strict scrutiny applies "only where candidacy or ballot access regulations severely burden the availability of political opportunity." *Id.* at 1326; *see id.* at 1321.

Strict scrutiny doesn't apply here because the Act doesn't severely restrict Plaintiffs' availability of political opportunity. In *Grizzle*, the Eleventh Circuit considered Georgia school board candidates' challenge to a Georgia law that prohibited them from running for school board because their immediate family members were supervisory employees in the school system. 634 F.3d at 1316. The district court applied strict scrutiny and entered a preliminary injunction in the candidates' favor. *Id.* On appeal, the candidates argued that the anti-nepotism provision required strict scrutiny because it was a "'severe restriction' on their right

to be candidates" because it "*completely* bar[red] them from running for office." *Id.* at 1321. The court rejected the candidates' argument, explaining that the provision did not severely restrict the availability of political opportunity:

> [The anti-nepotism provision] prohibits [the candidates], and like individuals, only from running for the school board governing the system in which certain family members are employed. Plaintiffs may run for any other elected office; they may vote, distribute campaign literature, voice their political opinions, and participate in and hold office in their political party of choice. Under the balancing test articulated by this Court in *Swanson*, the Plaintiffs' injury under the First Amendment is not so "severe" as to require strict scrutiny.

*Id.* at 1324.[8] The Eleventh Circuit therefore reversed the district court and remanded so that it could apply the proper standard, *id.* at 1326, under which "a State's important regulatory interests are generally sufficient to justify . . . restrictions which are 'reasonable' and 'nondiscriminatory,'" *id.* at 1322.

The same analysis applies to Plaintiffs' challenge here. In determining whether heightened scrutiny applies, it does not matter whether[9] Plaintiffs are

[8] As part of its thorough analysis, the court noted that precedent emphasized whether laws were discriminatory. *Grizzle*, 634 F.3d at 1322-23 (analyzing *Morial v. Judiciary Comm'n of La.*, 565 F.2d 295 (5th Cir. 1977), and emphasizing that the law at issue there "did not exclude candidates based on their viewpoint[] or their membership in an identifiable group, such as the poor or minority parties"); *id.* at 1323 (analyzing *Clements v. Fashing*, 457 U.S. 957 (1982), and emphasizing that the law at issue there did not concern "filing fees, invidious discrimination, and discrimination based on viewpoint or political affiliation").

[9] Plaintiffs do not clearly allege that they do not satisfy the three requirements they purport to challenge in this lawsuit: the immediate prior service requirement (¶ 13), the college degree requirement (¶ 14), and the residency requirement (¶ 15). There is only one allegation—and only as to one Plaintiff—that any of the requirements in fact affect these plaintiffs. Doc. 1 ¶ 21 (alleging Plaintiff Lenard "did not have three or more years of immediate prior service as a law enforcement

qualified to run for the specific office of Montgomery County Sheriff because that sort of narrow restriction does not severely restrict Plaintiffs' political opportunity. There is no meaningful burden on Plaintiffs' political opportunity by requiring that candidates for Montgomery County Sheriff have a college education and recent, relevant experience as a law enforcement officer or that they be residents of the County. "Plaintiffs may run for any other elected office; they may vote, distribute campaign literature, voice their political opinions, and participate in and hold office in their political party of choice." *Grizzle*, 634 F.3d at 1324. The only restriction is that they cannot run for Montgomery County Sheriff without first having the requisite qualifications. Given the narrow restriction on Plaintiffs' qualified constitutional rights, Plaintiffs' alleged injury "is not so 'severe' as to require strict scrutiny." *Id*.

Because Plaintiffs cannot "establish[] a 'severe' burden on any of [their] constitutional rights," the State Defendants need only show that the qualifications "rationally serve[] important state interests." *Stein v. Ala. Sec'y of State*, 774 F.3d

---

officer). Plaintiffs therefore lack standing to challenge the residency requirement and college degree requirement (and Plaintiff Vaughans lacks standing altogether). *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (Courts must "ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute."); *see also Storer v. Brown*, 415 U.S. 724, 737 (1974).

689, 700 (11th Cir. 2014) (district court opinion adopted by Eleventh Circuit and attached to opinion as appendix, quoting *Swanson*, 490 F.3d at 912). Because Alabama has important State interests supporting the qualification requirements for Montgomery County Sheriff, the Act easily survives rational basis review.

The immediate prior service provision—the only provision either Plaintiff alleges he does not satisfy—requires that the candidate (or an appointee) have "three or more years of . . . service as a law enforcement officer having the power of arrest," and that this service be current ("immediate prior service"). Ala. Act No. 2020-146 § 2(a)(6). In other words, the candidate must have current, relevant, and not insignificant experience before becoming Sheriff. Requiring candidates for Sheriff to have three years of immediate prior law enforcement experience helps ensure that they are capable of fulfilling the Sheriff's important responsibilities, including to "ferret out crime, apprehend and arrest criminals and, insofar as within their power, secure evidence of crimes in their counties and present a report of the evidence so secured to the district attorney or assistant district attorney for the county." Ala. Code § 36-22-3(a)(4). The college degree requirement similarly promotes candidates' experience and helps ensure that candidates for the important role of Montgomery County Sheriff are educated and prepared to hold public office. The residency restriction ensures that candidates have some degree of local knowledge and commitment to the local community. It cannot be said that these requirements are

irrational or that they do not promote having a qualified, experienced, and prepared Montgomery County Sheriff.

Promoting qualified and experienced candidates for Sheriff is undeniably a proper governmental purpose, and the challenged requirements are rationally related to that purpose. "[T]he test is not whether the regulations are necessary but whether they rationally serve important state interests." *Swanson*, 490 F.3d at 912. Because they do, Plaintiffs fail to state a claim and the Complaint is due to be dismissed.

## IV. Plaintiffs' federal claims for money damages are barred by qualified immunity.

Aside from their claims for declaratory and injunctive relief, Plaintiffs also demand money damages under 42 U.S.C. § 1983 on the ground that the State Defendants allegedly violated their rights under the First and Fourteenth Amendments. Because Plaintiffs cannot carry their burden of showing that their allegations, even if true, show a violation of their clearly established constitutional rights, the State Defendants are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To invoke qualified immunity, a government official must show she was acting within the scope of her "discretionary authority" when the

allegedly wrongful acts occurred. *Grider v. City of Auburn*, 618 F.3d 1240, 1254 n.19 (11th Cir. 2010). The burden then shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). This "two-pronged analysis may be done in whatever order is . . . most appropriate for the case." *Grider*, 618 F.3d at 1254 (citing *Pearson*, 555 U.S. at 236).

***The State Defendants acted within the scope of their discretionary authority.*** "A government official acts within her discretionary authority if the actions were (1) undertaken pursuant to the performance of [her] duties and (2) within the scope of [her] authority." *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (alterations in original). "[T]o pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] [her] legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).

Based on the allegations in the Complaint, it appears that Plaintiffs concede that Defendants acted within the scope of their discretionary authority. Doc. 1 ¶¶ 6-8. To the extent the Complaint contains any factual allegations about the Defendants, those allegations relate only to their "legitimate job description[s]." *Holloman*, 370 F.3d at 1266. Because Plaintiffs' alleged injury appears to stem from

Defendants' job-related functions, they acted within their discretionary function as to be entitled to qualified immunity.

***Plaintiffs do not allege a violation of clearly established law.*** Because the State Defendants were acting within the scope of their discretionary authority, Plaintiffs must show that the State Defendants (1) "violated a constitutional right" and that (2) "the violated right was clearly established." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation omitted). This Court can decide these two elements in any order; a plaintiff's failure to establish either is enough to trigger qualified immunity. *Pearson*, 555 U.S. at 242.

A plaintiff can show that a right is clearly established in three ways. *See Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013). First, a plaintiff can "produce a materially similar case decided by the Supreme Court, [the Eleventh Circuit], or the highest court of the relevant state." *Id.* (citation omitted). Second, a plaintiff can "point to a broader, clearly established principle [that] should control the novel facts" of the situation. *Id.* (citation and internal quotation marks omitted). And third, a plaintiff can show that the case is one of "obvious clarity" in that the federal constitutional provision is "specific enough to establish clearly the law applicable to particular conduct and circumstances … even in the *total absence of case law*." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002).

First, Plaintiffs cite no materially similar, binding case—and Defendants are aware of none—that could show Plaintiffs' alleged injury constitutes a violation of a clearly established constitutional right. Plaintiffs therefore cannot take the first path to showing that there was a violation of any clearly established constitutional right. *See Morton*, 707 F.3d at 1282.

Similarly, Plaintiffs cannot establish that their purported right was clearly established under the second or third methods for clearly establishing law, which are collectively "generally known as 'obvious clarity' cases." *See Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) ("Cases do not often arise under the second and third methods."). As set forth above, Plaintiffs' constitutional claims fail as a matter of law. Moreover, Alabama State courts—both the trial court and the Alabama Supreme Court on appeal—rejected claims materially identical to the constitutional claims Plaintiffs press here when they rejected the claims brought earlier this year by Plaintiff Lenard. And "judges disagree[ing] about a constitutional issue is itself evidence that a right is insufficiently clearly established for purposes of denying qualified immunity." *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018). Plaintiffs cannot show an alleged violation of a clearly established constitutional right. Accordingly, their request for money damages is due to be dismissed.

## V. Plaintiffs' State-law claims are barred by sovereign immunity or State-law immunity.

The Eleventh Amendment bars Plaintiffs' claims brought under the Alabama Constitution. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). The States enjoy immunity from private suits as a "fundamental aspect" of their sovereignty. *Alden v. Maine*, 527 U.S. 706, 713 (1999). Federal courts therefore lack jurisdiction to hear claims against State officials for alleged violations of State law. *Pennhurst*, 465 U.S. at 106, 121. A claim that State officials violated State law in carrying out their official responsibilities is a claim against the State for purposes of Eleventh Amendment immunity regardless of whether this Court has jurisdiction over any of Plaintiffs' other claims and "regardless of whether [they] seek[] damages or injunctive relief." *Id.* at 102, 121. Accordingly, Plaintiffs claims brought under the Alabama Constitution are due to be dismissed.

Further, to the extent Plaintiffs seek money damages under Alabama law, Alabama law absolutely bars those claims. Section 14 of the Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Section 14 "operates to provide absolute immunity" to constitutional officers—including the Governor, Attorney General, and Secretary of State—"with respect to suits against them in their individual capacity for money damages." *Ex parte Shelley*, 53 So. 3d 887, 897 (Ala. 2009); *see also Milton v. Espey*, 356 So. 2d 1201, 1202 (Ala. 1978) ("The prohibition of Section 14 cannot be circumvented by

suing the official or agent individually.”). And this immunity extends to all “activities performed while executing the duties of the office.” *Wheeler v. George*, 39 So. 3d 1061, 1092 (Ala. 2009); *see also Ex parte Davis*, 930 So. 2d 497, 500-01 (Ala. 2005) (extending absolute immunity to all actions “performed within the course and scope of the officer’s employment”). Accordingly, this Court should dismiss Plaintiffs’ claims under Alabama law for money damages because the Alabama Constitution absolutely bars such claims.

## CONCLUSION

Based on the foregoing, the State Defendants respectfully ask that the Court dismiss Plaintiffs’ Complaint in full.

Respectfully submitted,

Steve Marshall
*Attorney General*

s/ A. Reid Harris
Misty S. Fairbanks Messick (ASB-1813-T71F)
A. Reid Harris (ASB-1624-D29X)
Benjamin M. Seiss (ASB-2110-O00W)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.35.8674
Facsimile: 334.353.8400
Misty.Messick@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Julian L. McPhillips, Jr. (julianmcphillips@icloud.com) and David Sawyer (kdsawyer64@outlook.com).

s/ A. Reid Harris
***Counsel for the State Defendants***