**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION**

| | |
|---|---|
| **WILLIE J. LENARD, and TAHJ AHMAAD VAUGHANS,** | ) |
| **Plaintiffs,** | ) |
| **v.** | ) CASE NO. 2:22-cv-485-ECM-JTA |
| **KAY IVEY, IN HER INDIVIDUAL AND OFFICIAL CAPACITY, AS GOVERNOR OF THE STATE OF ALABAMA; STEVE MARSHALL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AS ATTORNEY GENERAL OF THE STATE OF ALABAMA; and JOHN MERRILL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AS SECRETARY OF STATE OF THE STATE OF ALABAMA,** | ) |
| **Defendants.** | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

COME NOW the Plaintiffs, Willie J. Lenard and Tahj Ahmaad Vaughans, by and through their undersigned counsel, Julian L. McPhillips, Jr., and K. David Sawyer, and file the Plaintiffs' Opposition to Defendants' Motion to Dismiss (Doc. 9)

# TABLE OF CONTENTS

Introduction ........................................................................................................ 3

Argument........................................................................................................ 7

I. Plaintiff Lenard's are not barred by res judicata …………………..................... 9

II. Each Plaintiff has standing. ......................................................................12

III. Plaintiffs have established a judiciable injury-in-fact ....................................16

IV. Plaintiffs have established redressability ……………………………………19

V. Plaintiffs have named proper Defendants ……………………………………21

VI. Plaintiffs state a claim a viable cause of action ………………………………24

VII. Plaintiffs' state law claim is not barred by immunity ....................................26

CONCLUSION ........................................................................................................27

## INTRODUCTION

Plaintiff Willie J. Lenard (hereinafter referred to as "Plaintiff Lenard") and Plaintiff Ahmad Vaughans (hereinafter referred to as "Plaintiff Vaughans") have filed this action challenging the constitutionality of Alabama Act No. 2020-146, a recently passed Alabama law that imposes severe restrictions upon qualified citizens who desire to run for the office of Sheriff for Montgomery County, Alabama. (Act No. 2020-146, attached as Exhibit 1).

These new local restrictions require candidates for the office of Sheriff for Montgomery County, Alabama (1) to have three or more years of *immediate* prior service as a law enforcement officer having the power of arrest; (2) to have been a resident of Montgomery County as a law enforcement officer for at least one year *immediately* prior to the qualification date; and (3) to have been awarded *a four-year college degree from an accredited university*. (See Exhibit 1). The three or more years of *immediate* law enforcement experience further imposes an age-related restriction upon anyone who has served for many years but has resigned or retired from law enforcement; and the four-year degree from an accredited university certainly imposes a severe restriction upon the less affluent, or the "poor."

As also alleged, these newly imposed restrictions, applied together, significantly reduce the number of qualified candidates for the Office of Sheriff for

Montgomery County, from over 175,000 to less than 1000 qualified electors (approximately one-half of one percent of Montgomery County's qualified voters and electors). (Doc. 1, ¶ 17). Moreover, these severe restrictions have never existed prior to 2020, and no such restrictions exist for candidates for *any office of Alabama's executive branch*, including "governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, <u>and a sheriff for each county</u>." (Art. V, § 112, <u>Ala.</u> <u>Const.</u> 1901, attached as Exhibit 2) (Emphasis added).

The United States Supreme Court has recognized a candidate's constitutional rights under the First and Fourteenth Amendments to associate for political ends and to participate equally in the electoral process. See *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059 2063, 119 L.Ed.2d 245 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 787-88, 103 S.Ct. 1564 1569, 75 L.Ed.2d 547 (1983). Because the right to vote is a fundamental constitutional right, the U.S. Supreme Court also affirmed that "the rights of voters *and the rights of candidates* do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock v. Carter*, 405 U.S. 134, 14243 (1972). Id. at 143. (Emphasis added).

While not all restrictions imposed by states on the candidates' eligibility impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates, restriction on candidacy do implicate a fundamental right when "the challenged restriction unfairly or unnecessarily burdens the availability of political opportunity." *Anderson*, 460 U.S. at 793. Accordingly, ballot access restrictions also directly implicate the constitutional rights and freedoms of voters to associate and cast their votes effectively. See *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968).

In *McKinney v. Kaminsky*, 340 F.Supp. 289 (M.D. Ala. 1972), the Court for the Middle District of Alabama addressed a five-year residency statutory requirement imposed upon residents of Montgomery County. There, the Court initially held that "the right to seek and hold public office and to engage in political activity is a property right" and is "protected by the Federal Constitution." (Citations omitted). 340 F. Supp. at 294.

While the Court understood that the Alabama legislature could prescribe qualifications for one who desires to become a candidate for office under the state's police powers, those qualifications must be reasonable and not in conflict with any constitutional provision. Any questions or doubts of eligibility of a candidate to seek political office should be resolved in favor of the candidate. 340 F. Supp. at 294.

The Court in *McKinney* continued:

> The state's right to prescribe qualifications of one seeking public office must be weighed in that light of rights of individuals to equal protection and due process secured by the Fourteenth Amendment. If the state's exercise of its right to prescribe qualifications of candidates invades an individual's right to equal protection of the laws, those qualifications are unconstitutional unless there is a showing of a compelling state interest thereunto pertaining. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600; *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583; *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647.

340 F. Supp. at 294.

Upon review of the imposed five-year residency restriction, the Court in *McKinney* determined that there was no compelling state interest requiring a county commissioner to reside within the district for which he offers himself for election for a period of five years and ruled the requirement "repugnant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." 340 F. Supp. at 296.

In this case, the multiple unconstitutional restrictions imposed by Act No. 2020-146 place similar unfair and unnecessary burdens upon the Plaintiffs' political opportunity, and further place suspect burdens upon the Plaintiffs and the Montgomery County voters' rights and freedoms to associate and choose among candidates. As alleged in Plaintiffs' Complaint, each Plaintiff is both an otherwise qualified candidate and a qualified voter who has suffered, and will continue

suffer, from the unconstitutional restrictions recently imposed by Alabama Act No. 2020-146.

## ARGUMENT

The Defendants have each filed a Motion to Dismiss asserting as follows:

> "Neither Plaintiff alleges that he plans to run in any future election, and one Plaintiff already litigated his claim—unsuccessfully—in State court. Because claim preclusion bars Plaintiff Lenard's claim and Plaintiff Vaughans cannot establish standing, the Complaint should be dismissed at the outset; the Court need not consider the merits of Plaintiffs' claims."

(Doc. 9, p.3)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

As alleged in the Plaintiffs' Complaint, a "candidate for the Office of Sheriff of Montgomery County, must now, pursuant to Alabama Act No. 2020-146, meet additional burdensome qualifications listed in paragraphs 13, 14, and 15, above." (See Alabama Act No. 2020-146, Exhibit 1); and (Doc. 1, ¶ 32). The Plaintiffs further assert in their Complaint the following:

34. Accordingly, the question is whether Act No. 2020-146 and its requirements of a four-year college degree from an accredited university, immediate 3-year law-enforcement experience, and one year residency as a law enforcement in Montgomery County during year preceding the election, **violate each Plaintiffs' and other electors' rights under the First and Fourteenth Amendments - not to be unlawfully discriminated against either in his exercise of the franchise or to become a candidate.**

35. These well-established rights associated with participating in a democracy include **the rights of association, freedom of speech, ballot access, and the right to cast an effective ballot**.

36. Act No. 2020-146 is a clear example of **the denial of the opportunity to participate in this regard and prohibits nearly every citizen in Montgomery County from running for the Office of Sheriff. This exclusion further denies the Plaintiffs and other voters of Montgomery County the opportunity to vote for a candidate of their choosing**.

37. For this reason, Alabama Act No. 2020-146 must be declared unconstitutional and invalid in violation of the First Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court grant the following relief:

a) Enter a judgment declaring Alabama Act No. 2020-146 to be violative of the First Amendment to the United States Constitution;

b) Enter a judgment declaring Alabama Act No. 2020-146 to be violative of the Due Process and/or Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

c) Enter a judgment declaring Alabama Act No. 2020-146 to be otherwise unconstitutional **as applied to the Plaintiffs, and**

> **to candidates for the Office of Sheriff of Montgomery County and their supporters and voters**;

(Doc. 1, Plaintiffs' Complaint) (Emphasis added).

Contrary to the Defendants' argument, each Plaintiff has alleged that the challenged unconstitutional Act violates his rights under the First and Fourteenth Amendments - not to be unlawfully discriminated against - in exercise of his right to run as a candidate for the Office of Sheriff for Montgomery County, and in exercise of his right to vote for a candidate of his selection for the Office of Sheriff for Montgomery County. This challenged unconstitutional Act not only violates the Plaintiffs' constitutional rights as alleged, but also violates the rights of a significant majority of all qualified electors and voters in Montgomery County, Alabama.

Again, as alleged in Plaintiffs' Complaint (Doc. 1), each Plaintiff seeks a judgment from this Court declaring Alabama Act No. 2020-146 unconstitutional and in violation of each Plaintiff's rights pursuant to the First and Fourteenth Amendments.

## I. Plaintiff Lenard's claims are not barred by *res judicata*

The Defendants also argue that Plaintiff Lenard's claims are barred by *res judicata*, and assert Mr. Lenard's claims are *identical* to what he raised, or could have raised, when he sought ballot access in **the Democratic primary** for the

Office of Sheriff for Montgomery County. However, in state court case No. 03-CV-2022-000046, filed in Montgomery County Circuit Court, on February 7, 2022, Mr. Lenard was seeking *immediate declaratory relief*. Mr. Lenard requested an order *directing the Montgomery County Democratic Party Chairperson to certify him* as a qualified candidate for the Office of Sheriff for Montgomery County so that he could appear on the Montgomery County **Democratic Party primary ballot**. This is not what Mr. Lenard alleges now, nor does this action seek an immediate order directing action by the Montgomery Democratic Party.

When considering whether to give *res judicata* effect to a state court judgment, this Court "must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation." *Kizzire v. Baptist Health System, Inc.*, 441 F.3d 1306, 1308-09 (11th Cir. 2006). Under Alabama law, "the essential elements of *res judicata* are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Equity Res. Mgmt., Inc. v. Vinson*, 723 So.2d 634, 636 (Ala.1998).

As stated above, the prior action filed in state court by Plaintiff Lenard was a declaratory judgment action asking the court to order the Montgomery Democratic Party to allow Mr. Lenard to appear on the Montgomery Democratic Primary ballot. When the Circuit Court denied Mr. Lenard the requested relief, Mr. Lenard

filed an *expedited appeal* making his same request to the Alabama Supreme Court. There, the Alabama Supreme Court did not address Mr. Lenard's request to appear on the Montgomery Democratic Primary ballot, and affirmed, with no opinion. Also, in Mr. Lenard's declaratory judgment action filed in state court, Plaintiff Vaughans was not a party, nor was Plaintiff Vaughans in any way privy to Mr. Lenard.

To reiterate, this action does not similarly seek the immediate declaratory relief sought in state court, nor is Plaintiff Lenard asking this Court to direct any action to be taken by the Montgomery Democratic Party. In addition, the Alabama Supreme Court, after granting an expedited appeal, merely ruled as follows: "AFFIRMED. NO OPINION." A no-opinion affirmance "has no precedential value." *Bradberry v. Carrier Corp*., 86 So. 3d 973 (Ala. 2011).

Finally, while the *Rooker-Feldman* doctrine holds that a federal district court may not review and reverse a state-court civil judgment (See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)), it is well established that "a statute or rule governing the decision may be challenged in a federal action." *Skinner v. Switzer*, 131 S. Ct. 1289, 179 L. Ed. 2d 233, 562 U.S. 521 (2011) "If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal

jurisdiction that the same or a related question was earlier aired between the parties in state court." *Molina v. Aurora Loan Servs., LLC* (11th Cir. 2015).

For each of the forgoing reasons, Mr. Lenard's present action is not barred by *res judicata*.

## II. Each Plaintiff has standing

The Defendants next assert that the Plaintiffs lack standing as voters because their injury is no different from any other voter in Montgomery County, and because the Complaint contains no allegations about any future injury.

However, as initially stated above, each Plaintiff has sufficiently alleged that the challenged law, Alabama Act No. 2020-146, violates his rights under the First and Fourteenth Amendments - not to be unlawfully discriminated against either in his exercise of the right to vote or his right to become a candidate. Each Plaintiff claims that the challenged Act prohibits him from running for the Office of Sheriff for Montgomery County, and further denies each Plaintiff the opportunity to vote for a candidate of his choosing. This certainly includes future elections.

The First and Fourteenth Amendments afford all candidates vying for elected office, *and their voting constituencies*, the fundamental right to associate for political purposes and to participate in the electoral process. *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992); *Anderson*, 460 U.S. at 787–88. Moreover, the state may not unfairly or unnecessarily burden *either* a

minority party's *or an individual candidate's* equally important interest in the continued availability of political opportunity. “The interests involved are not merely those of parties *or individual candidates*; the voters can assert their preferences only through candidates or parties or both and it is this broad interest that must be weighed in the balance. The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters.” *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974)

As the U.S. Supreme Court has held, it is well established that placing restrictions on a candidate's access to the ballot interferes with their right to associate for political purposes and the rights of qualified voters to cast their votes for the candidates of their choice. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986) (citing *Williams*, 393 U.S. at 30, 89 S.Ct. 5 ); see also *Norman v. Reed*, 502 U.S. 279, 288, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992); *Anderson*, 460 U.S. at 786, 103 S.Ct. 1564 ; *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). Ballot-access requirements that place more burdensome restrictions on *certain types* of candidates than on others implicate rights under the Equal Protection Clause as well. See *Williams*, 393 U.S. at 30–31, 89 S.Ct. 5.

As asserted in Plaintiffs’ Complaint, each Plaintiff challenges the constitutionality of Alabama Act No. 2020-146 and its severe restrictive ballot

access requirements, and alleges the Act violates the Plaintiff's First and Fourteenth Amendment rights, both as candidates to participate in the political process, and as voters to associate and cast their votes for otherwise qualifying candidates, all without serving any compelling state interest. Each Plaintiff requests (1) a declaratory judgment stating that Act No. 2020-146 and its ballot access requirements cannot constitutionally be enforced; and (2) injunctive relief prohibiting the Defendants from enforcing these restrictive requirements with respect to future elections for the Office of Sheriff for Montgomery County, Alabama.

In addition, each of Plaintiff's claims fall within the *exception* to the mootness doctrine for cases that are "capable of repetition, yet evading review." See *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Election law cases routinely fall within this exception. A controversy is capable of repetition, yet evading review when the challenged action, in its duration, is too short to be fully litigated. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam). See *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir.2005) ("Challenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election."). These restrictions certainly will be repeated.

Alabama Act No. 2020-146 unfairly and unnecessarily burdens each Plaintiff's equally important interest in the continued availability of political opportunity. The interests involved are not merely those of parties or individual candidates; the Plaintiffs, as voters, also can assert their preferences through candidates or parties or both and it is this broad interest that must be weighed in the balance. Again, the right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters. *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974).

Each plaintiff shows a reasonable expectation or a demonstrated probability that the controversy will recur. See *Honig v. Doe*, 484 U.S. 305, 319–23, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). In other words, "there is a reasonable expectation that the plaintiffs will be subject to the same action again." As stated in Plaintiffs' Complaint, there currently exists, and will remain to exist, a reasonable expectation that each Plaintiff will be subject to the severe restrictions imposed by Act No. 2020-146, either as a candidate, or as a voter. It is more than reasonably likely that this controversy will recur time and again.

However, even if the Defendants could show how each Plaintiff is unlikely to run in the future as a candidate for the Office of Sheriff for Montgomery County, Alabama, this does not defeat the court's subject-matter jurisdiction. As stated by each Plaintiff, he has not brought suit only as a candidate, but also as a

qualified voter. The Fourteenth Amendment rights of each Plaintiff. as a voter in future elections, also would be burdened by the challenged law. Moreover, the courts of appeals have found election-law controversies to be ‘capable of repetition’ with respect to individual plaintiffs even without any explicit statement by those plaintiffs that they intended to run or vote again. See *Lawrence*, 430 F.3d at 371.

Accordingly, each Plaintiff, as candidate and voter, has established individual standing to challenge Act No. 2020-146, and its severe unconstitutional barriers and restrictions.

## III. Plaintiffs have established a judiciable injury in fact

The Defendants further argue that Plaintiffs’ Complaint is only “a grievance that amounts to nothing more than an abstract and generalized harm to a citizen’s interest in the proper application of the law does not count as an ‘injury in fact.” Citing *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).

In determining whether a Plaintiff has standing, the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not `conjectural' or `hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly traceable to the

challenged action of the defendant, and not the result of the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992). The plaintiff must show that he is "able and ready." See *Gratz v. Bollinger*, 539 U.S. 244, 262, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003).

In *Carney v. Adams*, cited by the Defendants, Adams did not show the necessary "injury in fact." As determined by the Court, Adams simply *felt* that "Delaware's laws should comply with the Federal Constitution" and "that kind of interest does not create standing." According to the Court, the plaintiff's *feeling* about the law was merely "conjectural or hypothetical." Id., at 705–706.

The facts asserted in this case are much more analogous to those addressed by the Court in *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009). There, for purposes of standing, the Plaintiffs alleged a denial of equal treatment as "registered voters who did not possess an acceptable photo identification and would 'be required to make a special trip to the county registrar's office that is not required of voters who have driver's licenses or passports.'..." *Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009). Accepting the Plaintiffs' standing, the Court held that the "injury in fact" is the denial of equal treatment resulting from the *imposition of the barrier*, not the ultimate inability to obtain the benefit.

The Court continued: “The slightness of their burden also is not dispositive. The Supreme Court has rejected the argument that an injury must be "significant;" and that a small injury, "an identifiable trifle," is sufficient to confer standing. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973).

As alleged by Plaintiff Lenard and Plaintiff Vaughans, the challenged and unconstitutional restrictions imposed by Act No. 2020-146 have placed unfair and unnecessary *barriers* and burdens upon each Plaintiff’s political opportunity to run for the Office of Sheriff for Montgomery County. In addition, these unnecessary restrictions place suspect barriers upon each Plaintiff’s rights and freedoms to associate and choose among candidates who would otherwise qualify for this office. Each Plaintiff has suffered and continues to suffer an “injury in fact" and, thus, has standing to challenge the constitutionality of this Act’s unconstitutional barriers and restrictions.

The Defendants further represent to the Court that Alabama’s two-year statute of limitations bars the Plaintiffs’ action because Act No. 2020-146 was signed by the Governor on May 18, 2020. However, it is well recognized in Alabama that ‘[N]o period of limitation at all is applicable to an action for a declaratory judgment ... in cases involving a continuing harm, such as the application of an invalid statute.’ (Citations omitted). *Breland v. City of Fairhope*,

229 So.3d 1078 (Ala. 2016). The Alabama Supreme Court has recognized that an unconstitutional ordinance (or statute), until its repeal or a judicial declaration of its invalidity, constitutes a situation in which *a new cause of action accrues every day*. Citing "*Wallace v. New York*, 40 F.Supp.3d 278, 302 (E.D.N.Y.2014) (explaining that 'the clock on any challenge to the constitutionality of a statute, whose continued application works an ongoing constitutional violation, starts to run anew, every day that the statute applies')." *Breland*, at 1088.

As well stated in the Plaintiffs' Complaint, Plaintiffs specifically seek declaratory relief and a judgment declaring Alabama Act No. 2020-146 to be violative of the First Amendment to the United States Constitution; declaring Alabama Act No. 2020-146 to be violative of the Due Process and/or Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and declaring Alabama Act No. 2020-146 to be otherwise unconstitutional as applied to the Plaintiffs, and to candidates for the Office of Sheriff for Montgomery County and their supporters and voters. (Doc. 1, Count I, ¶ 37, pp. 11-12).

The unfair and unnecessary barriers imposed by Alabama Act No. 2020-146 have imposed injury in fact upon each Plaintiff. These unconstitutional barriers continue day to day, and the Plaintiffs' Complaint is not barred by any statute of limitations.

**IV. Plaintiffs have established Redressability**

A plaintiff must show that his harm is redressable. *Lujan*, 504 U.S. at 561. The redressability requirement "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College*, 454 U.S. at 472, 102 S.Ct. 752. The U.S. Supreme Court has consistently focused on whether there is a "substantial likelihood that the requested relief will remedy the alleged injury in fact." *Sprint Commc'ns Co., L.P. v. APCC Srvs., Inc.*, 554 U.S. 269, 287, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008) (emphasis omitted); see also *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

As the Eleventh Circuit recently confirmed, "a plaintiff need not demonstrate anything more than a substantial likelihood of redressability." *Wilding v. DNC Srvs. Corp.*, 941 F.3d 1116, 1126–27 (11th Cir. 2019). Here, the relief that the Plaintiffs seek—a declaration from the Court that the barriers and restrictions imposed by Alabama Act No. 2020-146 are unconstitutional—directly redresses their injuries. The entry of such a judgment would preclude the Defendants from enforcing the unconstitutional act. See *Reprod. Health Servs. v. Strange*, 3 F.4th 1240 (11th Cir. 2021).

As stated above, each Plaintiff has presented a substantial likelihood that the declaratory relief requested will remedy the alleged injury in fact. Again, each Plaintiff is with standing to challenge the continuing unconstitutional restrictions imposed by Alabama Act No. 2020-146.

**V. Plaintiffs have named proper Defendants**

The Eleventh Amendment's "fundamental principle of sovereign immunity limits the grant of judicial authority in Art[icle] III." *Pennhurst State Sch. &Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

However, in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the U.S. Supreme Court created an exception to this general principle by holding that a suit challenging the constitutionality of a state official's action in enforcing state law is not a suit against the state. See 209 U.S. at 159-60. Instead, the law at issue, if found unconstitutional, is void, and therefore does not "impart to [the official] any immunity from responsibility to the supreme authority of the United States." Id. at 160.

The U.S. Supreme Court also made clear that the way to bring such a suit is to bring a suit for prospective injunctive relief against the officials charged with enforcing the law. See id. at 155-56, 159. Because a state cannot authorize an official to do something that violates the Constitution, a state official who enforces an unconstitutional action is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." Id. at 160. Thus, a federal court has authority, under the Constitution, to grant "prospective injunctive relief to prevent a continuing violation of federal law." *Green*, supra, at 68.

Courts have understood the *Ex parte Young* exception to sovereign immunity to be based on the legal fiction that state officials act ultra vires "when they enforce state laws in derogation of the Constitution," and are therefore stripped of official immunity. Id. at 1336–37. For courts to enjoin enforcement of an allegedly unconstitutional law under *Ex parte Young*, the state-official defendant must have "**some connection** with the enforcement of the act." (Emphasis added). 209 U.S. at 157.

The Plaintiffs have named three Defendants in this action due to each Defendant's "connection" with the enforcement of Alabama Act No. 2020-146. First, the Alabama Governor, pursuant to the Alabama Constitution §125, is with the authority to both approve and veto an act of the Alabama legislature. In this

regard, the Governor is "connected" to Act No. 2020-146, as the Governor signed and approved the unconstitutional act.

Also, the Alabama Attorney General is required to be heard in all cases challenging the constitutionality of a statute, ordinance, or franchise. See Ala. Code (1975) § 6-6-227. In addition, Ala. Code (1975) § 36-15-1(2) requires the Attorney General to "attend to all cases other than criminal that may be pending in the courts of this state, in which the state may be in any manner concerned."

Likewise, Rule 44, Ala.R.App.P., requires parties to serve the attorney general with any appellate brief challenging the validity of a statute if the attorney general is not a party to the proceeding). In addition, Ala. Code (1975) § 36-15-1(7) and (8), state the Alabama Attorney General "may carefully examine all of the general statutes now in force, or which hereafter may be enacted by the Legislature from time to time, as to their clarity and constitutional validity," and then make a written report to the governor and judiciary committees of the state legislature to point out invalid laws "and also mak[e] suggestions as to inaccuracies, inadvertences, mistakes, and omissions in statutes, which, in his or her opinion, should be corrected," id. at § 36-15-1(8).

Alabama law further gives the Attorney General broad authority "to institute and prosecute, in the name of the state, all civil actions and other proceedings necessary to protect the rights and interests of the state." Ala. Code (1975) § 36-15-

12. The Alabama Attorney General has exceedingly more than "some connection" with enforcement of Alabama Act No. 2020-146.

Finally, pursuant to Ala. Code (1975) § 17-1-3(a), "The Secretary of State is the chief elections official in the state and shall provide uniform guidance for election activities." The Secretary of State, as "the chief elections official in the state" of Alabama who "shall provide uniform guidance for election activities, has the necessary connection with enforcement of Alabama Act No. 2020-146. See *OCA-Greater Houston v. Texas*, 867 F.3d 604, 613-614 (5th Cir. 2017). In addition, the Alabama Secretary of State has answered prior court challenges to election laws and has not contested his "connection" in this action. See *Stein v. Ala. Sec'y of State*, 774 F.3d 689 (11th Cir. 2014).

**VI. Plaintiffs state a viable cause of action**

The Defendants also assert in their Motion to Dismiss that the harsh candidacy restrictions imposed are not "severe," and, thus, must only rationally serve important state interests. The Defendants further claim that these restrictions do not severely burden the availability of political opportunity. The Defendants make their arguments and rely upon the Eleventh Circuit's decision in *Grizzle v. Kemp*, 634 F.3d 1314 (11th Cir. 2011), where certain Georgia school board candidates challenged an anti-nepotism restriction.

However, as asserted in Plaintiffs' Complaint, and as stated above, each of the newly enacted barriers and restrictions of the contested Act not only restrict the Plaintiffs' from running for the Office of Sheriff for Montgomery County, but also severely limit who each Plaintiff may choose to support or vote for. Again, these restrictions have diminished the number of viable candidates for this executive office in Montgomery County from approximately 175,000 to fewer than 1000.

Unlike the anti-nepotism law addressed in *Grizzle*, Alabama Act No. 2020-146 essentially *mandates* a form of "nepotism." The law requires the candidate to have been an active law enforcement officer in Montgomery County for the year *immediately* prior to the election, requires the candidate to have been an active law enforcement officer for three years *immediately* prior to the election, and requires the candidate to have been awarded a four-year college degree from an accredited university.

These restrictions not only severely limit who may run for the Office of Sheriff for Montgomery County, and severely limit who the Plaintiffs may support or vote for, but essentially preselect or predetermine the few colleagues of "active law enforcement" who may run for the Office of Sheriff for Montgomery County. These cumulative barriers are unlike the anti-nepotism laws addressed in *Grizzle*.

To reiterate, the Alabama Constitution and applicable Alabama statutes do not require a four-year college degree from an accredited university for any other

official of the Alabama executive branch. Likewise, the Alabama Constitution and Alabama statutes do not require a candidate for Governor, or any other executive office in Alabama, to have *immediate* prior experience before holding an executive office in Alabama. Alabama Act No. 2020-146 severely restrict who may run, and who each voter may select, to serve as Sheriff for Montgomery County.

In *Anderson,* supra, 460 U.S., at 788-789, the U.S. Supreme Court held that a court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." Id., at 789. In their Complaint, this is what the Plaintiffs have asked this Court to do

**VII. Plaintiffs' State Law claim is not barred by immunity**

Plaintiffs allege in Count III that Alabama Act No. 2020-146 is a violation of the Plaintiffs' rights to due process and equal protection in violation of Sections 1, 6, 13, 22, and 35 of Article I of the Constitution of Alabama (1901). The Defendants assert they are entitled to immunity as to the Plaintiffs' state law claim.

Alabama grants sovereign immunity to its state executive officers. As stated by Ala. Const. art. I, § 14, the State of Alabama shall never be made a defendant in

any court of law or equity. Id. However, the Alabama Supreme Court has also recognized each of the following exceptions to immunity: actions brought (1) to compel an officer to perform his duties, (2) to compel an officer to perform ministerial acts, (3) **to enjoin him from enforcing unconstitutional laws,** (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) **to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute**. (Emphasis added). *Johnson v. Conner*, 720 F.3d 1311 (11th Cir. 2013), citing *Alexander v. Hatfield*, 652 So.2d 1142, 1143 (Ala.1994).

The Plaintiffs' state law claim falls directly under these recognized exceptions allowing injunctive and declaratory relief. The Plaintiffs, in their Complaint, seek to enjoin the enforcement of unconstitutional barriers created by an unconstitutional law, and ask for the Court's construction of Alabama Act No. 2020-146. The Plaintiffs state law claim is not prohibited by the Defendants' alleged immunity.

## CONCLUSION

WHEREFORE, PREMISES CONSIIDERED, based upon the Plaintiffs' allegations, applicable law, and argument, the Plaintiffs' Complaint must not be dismissed.

Respectfully submitted this 21st day of September 2022.

/s/ Julian L. McPhillips, Jr.
JULIAN L. McPHILLIPS, JR.
McPhillips Shinbaum, LLP
516 S. Perry Street
Montgomery, AL 36104
Telephone: (334) 262-1911
Facsimile: (334) 263-2321
julianmcphillips@icloud.com

/s/ K. David Sawyer
K. David Sawyer
McPhillips Shinbaum, LLP
516 S. Perry Street
Montgomery, AL 36104
Telephone: (334) 239-7382
Facsimile: (334) 263-2321
kdsawyer64@outlook.com

**OF COUNSEL**
McPhillips Shinbaum, LLP
516 S. Perry Street
Montgomery, AL 36104
Telephone: (334) 262-1911
Facsimile: (334) 263-2321
julianmcphillips@icloud.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Misty S. Fairbanks Messick (ASB-1813-T71F)
A. Reid Harris (ASB-1624-D29X)
Benjamin M. Seiss (ASB-2110-O00W)
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.35.8674
Facsimile: 334.353.8400
Misty.Messick@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

/s/ K. David Sawyer
K. David Sawyer